UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JOAN NEWBERGER                                    CIVIL ACTION

VERSUS                                            NO: 11-2996

LOUISIANA DEPARTMENT OF                           SECTION: R
WILDLIFE AND FISHERIES

**ORDER AND REASONS**

Before the Court is defendant Louisiana Department of Wildlife and Fisheries' (LDWF) motion to dismiss. For the following reasons, the Court grants defendant's motion.

**I.   BACKGROUND**

In April 2006, following a statutory grant of authority in La. R.S. § 56:6(30), the Louisiana Wildlife and Fisheries Commission adopted regulations banning the importation and private possession of non-human primates. The regulations contain a grandfather clause permitting individuals who legally possessed a non-human primate at the time of the effective date of the regulation to apply for a permit from the LDWF to retain possession of the primate. LAC 76:V.115(G)(1)(b). The regulations also provide that "a physically challenged individual who has exclusive possession of no more than one monkey that is working to aid and assist the individual with their disability can

receive a permit." LAC 76:V.115(G)(1)(a). This provision is limited to monkeys "obtained through and trained by a licensed and accredited non-profit organization dedicated to improving the quality of lives for the physically challenged." *Id.* Except for the grandfather provision and the service primate provision, possession of non-human primates is prohibited.

On February 26, 2011, plaintiff Joan Newberger, who suffers from autism, was on Bourbon Street in the French Quarter of New Orleans with her caregiver and four small monkeys in pirate attire that Newberger had in a baby stroller. As plaintiff was changing the monkeys' diapers and feeding them, she was approached by several New Orleans policemen and LDWF employees and given criminal citations for cruelty to animals and for possession of non-human primates in public and without a license. *See* La. R.S. §§ 14:102.1; 56:6(30). The monkeys were taken and transported to a nearby zoo for holding. Plaintiff and her caregiver were convicted at trial on July 7, 2011 in the Municipal Court for the Parish of Orleans. The judge ordered plaintiff's monkeys seized pursuant to LAC 76:V.115(J), which states that, upon conviction for violating the Wildlife and Fisheries Commission's regulations, "any license/permit may be revoked and the quadrupeds or other animals seized in connection with the violation will be forfeited." LAC 76:V.115(J).

Plaintiff now brings suit under the Americans with Disabilities Act (ADA), contending that the monkeys were service animals under the Act. She asks this Court to order LDWF to return the monkeys to her.[1] LDWF moves the Court to dismiss plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.   STANDARD

### A.   Treatment as a Motion for Summary Judgment

In considering a motion to dismiss for failure to state a claim, a court must typically limit itself to the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings[2] are

---

[1]   One of the monkeys died after seizure.

[2]   For further explanation of what constitutes "matters outside the pleadings," *see* 5C Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1366 (3d ed.):
> Most federal courts ... have viewed the words "matters outside the pleading" as including any written or oral evidence introduced in support of or in opposition to the motion challenging the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings. Memoranda of points and authorities as well as briefs and oral arguments in connection with the motion, however, are not considered matters outside the pleadings for purposes of conversion. The same is true for various types of exhibits that are attached to the pleading, matters of which the district court can take judicial notice, and items of unquestioned authenticity that are referred to in the challenged pleading and are "central" or "integral" to the pleader's claim for relief.

3

presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But uncontested documents referred to in the pleadings may be considered by the Court without converting the motion to one for summary judgment, even when the documents are not physically attached to the complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (finding that the district court properly considered documents not attached to the complaint in ruling on a Rule 12(c) motion). The Court also may consider documents attached to a motion to dismiss without converting it to a summary judgment motion if the documents are referred to in the complaint and are central to the plaintiff's claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted).

In responding to the Court's Order to show cause[3] and defendant's motion to dismiss, plaintiff submitted additional documents that are not referred to in her complaint and that "provide[] some substantiation for and do[] not merely reiterate what is said in the pleadings." 5C Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1366 (3d ed.) (recognizing that such materials are typically treated as matters outside the pleadings). The Court,

---

[3] R. Docs. 7, 8.

in considering these materials, will convert defendant's motion to dismiss into a motion for summary judgment.[4]

**B.   Summary Judgment Standard**

Summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate

---

[4] Plaintiff was on notice, at least from the time that she submitted matters outside her pleading, that the Court could convert defendant's motion to dismiss into a motion for summary judgment. *See, e.g.*, *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990) (plaintiff was on notice, from the time that he submitted matters outside the pleading to the district court, that the court could treat defendant's motion to dismiss as a motion for summary judgment); *Collier v. City of Chicopee*, 158 F.3d 601, 603 (1st Cir. 1998) ("By incorporating affidavits into his opposition to [defendant's] motion, [plaintiff] implicitly invited conversion – and a party who invites conversion scarcely can be heard to complain when the trial court accepts the invitation.").

or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at

325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

## III. DISCUSSION

### A. Sovereign Immunity

Plaintiff has sued the Louisiana Department of Wildlife and Fisheries, a state agency. Although defendant has not raised a sovereign immunity defense, the Court will consider it *sua sponte*. *See Ogrey v. Texas*, 207 Fed. Appx. 383, 386 (5th Cir. 2006) ("Considering that sovereign immunity is similar to a subject matter jurisdiction bar, the district court should have considered the sovereign immunity issue and reached a conclusion, even if technically improperly presented."); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 n.8 (5th Cir. 2002) ("We may consider this [sovereign immunity] issue *sua sponte* because it bears on this court's subject matter jurisdiction.").

Because plaintiff has sued a public entity under the ADA, the case is governed by Title II of that statute. In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court held that when courts consider sovereign immunity in the context of

Title II claims, they should first address whether the conduct challenged by the plaintiff violates Title II, then resolve whether the conduct also violates the Fourteenth Amendment, and finally, if Title II is violated but not the Fourteenth Amendment, address whether Title II validly abrogates sovereign immunity in these circumstances. *Id.* at 159; *Brockman v. Tex. Dep't of Crim. Justice*, 397 Fed. Appx. 18, 23 (5th Cir. 2010). "The purpose of this rule is to prevent courts from unnecessarily addressing the constitutional issue of whether the ADA may validly abrogate sovereign immunity in the absence of a violation of the Fourteenth Amendment." *Brockman*, 397 Fed. Appx. at 23. The Fifth Circuit has noted that "when lower courts have unnecessarily reached issues concerning the constitutionality of the ADA's abrogation of sovereign immunity, the offending portions of their decisions have been vacated on appeal." *Id.* (concluding on appeal that ADA claims were either untimely or had been waived, and thus, vacating the portions of the magistrate judge's opinion, adopted by the district court, that concerned abrogation of sovereign immunity under the ADA); *see also Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011) (vacating portions of the district court's decision that addressed whether plaintiff's allegations established violations of the Fourteenth Amendment and whether Title II of the ADA validly abrogates state sovereign immunity, since "such an inquiry, which would include resolution

of constitutional issues, is unnecessary unless and until Hale has stated a violation of Title II"). In this case, plaintiff has failed to demonstrate a violation of the ADA. *See infra*. Therefore, the Court need not proceed further in the sovereign immunity analysis.

**B.   Title II of the ADA**

Although LDWF confiscated plaintiff's monkeys in February of 2011, the monkeys were later judicially seized following Newberger's criminal convictions.[5] They are thus no longer within the LDWF's control, and this Court cannot require the defendant to perform a task that it lacks authority to perform. Yet even if this suit against LDWF were the proper vehicle for plaintiff to attempt to retrieve her animals, her claim nevertheless lacks merit.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The regulations implementing Title II require public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to

---

[5]   R. Doc. 13-2 at 18.

avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Plaintiff contends that she is a qualified individual with a disability, and that the monkeys qualify as a service animals under the ADA, thus entitling her to an accommodation.[6]

At the time plaintiff's monkeys were confiscated, the regulations defined a service animal as "any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items." 28 C.F.R. § 36.104

---

[6] ADA statutes and regulations discuss the benefit of access with a service animal in terms of modifications to policies and procedures. *See* 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(c)(1); 28 C.F.R. § 35.130(b)(7). Although the regulation addressing service animals concerns public accommodations, "a public entity has the same legal obligation as a public accommodation to make reasonable modifications to policies or procedures to allow service animals access to facilities and places of public accommodation when necessary to avoid discrimination on the basis of disability." *Rose v. Springfield-Greene County Health Dep't*, 668 F. Supp. 2d 1206, 1215 n.9 (W.D. Mo. 2009); *accord Pena v. Bexar Cnty.*, 726 F. Supp. 2d 675, 685 (W.D. Tex. 2010); *see also* 28 C.F.R. § 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability[.]").

(2010).[7] There are no requirements as to the amount or type of training that a service animal must undergo, nor the type of work or assistance that the animal must provide, but the animal must be trained to perform tasks for the benefit of a disabled individual. *Rose v. Springfield-Greene County Health Dep't*, 668 F. Supp. 2d 1206, 1214-1215 (W.D. Mo. 2009); *Access Now, Inc. v. Town of Jasper*, 268 F. Supp. 2d 973, 980 (E.D. Tenn. 2003); *Green v. Housing Authority of Clackamas County*, 994 F. Supp. 1253, 1256 (D. Or. 1998). Put another way, "there must be some evidence to set a service animal apart from an ordinary pet[,]" even if documented evidence of individual training is not required. *Baugher v. City of Ellensburg*, 2007 U.S. Dist. LEXIS 19073, at *15 (E.D. Wash. 2007).

While the plaintiff indicates that she enjoyed dressing the monkeys and that they had a calming effect on her, she fails to discuss how the monkeys were trained to do tasks for her, or what tasks they performed. *Cf. id.* ("[T]he issue with regard to

---

[7]  See Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 Fed. Reg. 56236, 56265-66 (Sept. 15, 2010) for discussion about the change in the definition of "service animal." Today, the regulations specifically limit service animals to dogs. See 28 C.F.R. § 36.104 ("Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition.").

whether [the dog] is considered a 'service animal' ... [turns on] whether [the dog] was trained *to do work or perform tasks* for the benefit of an individual with a disability.") (emphasis in original); *Rose*, 668 F. Supp. 2d at 1215 (noting that, despite claims that plaintiff trained her monkey to perform various tasks to provide emotional support or keep people at bay, an "animal that simply provides comfort or reassurance is equivalent to a household pet, and does not qualify as a service animal under the ADA"). And although plaintiff submits an email from a hospital nurse indicating that the monkeys "assist with clearing [Newberger's] airway while she sleeps or has a seizure," there is, again, no indication of any training, nor an explanation of how a constricted airway relates to plaintiff's autism or otherwise qualifies as a disability under the ADA. *Cf. Pruett v. Ariz.*, 606 F. Supp. 2d 1065, 1071 (D. Ariz. 2009) (noting that chimpanzee that "has been socialized and is able to retrieve objects on command" did not qualify as a service animal since it was "not trained to perform tasks specifically related to [plaintiff's] disability"); *Rose*, 668 F. Supp. 2d at 1215 ("[W]hile the monkey bringing Plaintiff a toothbrush or the remote to the TV may relate to a disability if Plaintiff needed assistance with fetching items, Plaintiff fails to sufficiently explain how these actions are required for her to cope with her agoraphobia or anxiety disorder other than to provide her comfort

or encouragement."). Nor has Newberger furnished evidence demonstrating why she needed four monkeys instead of one.

Based on the evidence in the record, plaintiff's monkeys do not qualify as service animals under the ADA. Newberger is not entitled to an accommodation from Louisiana's regulatory scheme.

**IV. CONCLUSION**

For the foregoing reasons, the Court grants defendant's motion.

New Orleans, Louisiana, this 17th day of August, 2012

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE